Judge SUDDOCK,
dissenting.
I agree with the majority’s conclusion that the trial judge erred by admitting into evidence a domestic violence protective order which recited that there was probable cause to believe that Olson had committed serious crimes. But I disagree that the trial court’s limiting instructions rendered the error harmless.
I reach this conclusion because Olson bore the burden of proving, as an element of his necessity defense, that the harm he allegedly avoided when he violated the court’s order was graver than the harm he inflicted by violating it.[1] Olson described the avoided harm at trial: he testified that after troopers served him with the protective order at approximately 6 p.m. at his trailer in Big Lake, he walked for about eight and a half hours to downtown Wasilla in ten-degree weather, and feared that he was becoming hypothermic. Concerned for his safety, he telephoned'his daughter and had her drive him back to the trailer on Ms. Olson’s property. He then went to bed and was arrested later that morning.
At trial’s end, the jury was instructed to resolve Olson’s necessity defense in part by balancing the alleged harm that Olson avoided (hypothermia) against the harm caused by his violation of the domestic violence protective order. If the jury accepted Olson’s testimony that he only returned to the trailer out of the necessity to avoid hypothermia, the jury could have concluded that the harm flowing from his violation of the order was negligible in comparison to Olson’s risk of hypothermia. The jury could have then found in Olson’s favor by virtue of his necessity defense.
But once the judge allowed the introduction of evidence suggesting that Olson had already committed serious crimes of domestic violence—assault, stalking,' a sexual 'offense, criminal mischief, and criminal trespass—the litany of crimes raised the specter of Olson as a violent and obsessive person capable of sexual predation.
It is implausible that the jury could set those allegations aside and conclude that the risk posed to Ms. Olson by Olson’s presence in the trailer was negligible. Thus, the prior-crime evidence likely prejudiced Olson’s necessity defense.
Perhaps perfectly drafted curative instructions could have ameliorated this taint. But I conclude that the two curative instructions that were actually given were ambiguous because they failed to focus upon the core prejudice created by the evidence: the fact that the allegations of prior domestic violence crimes could have caused the jurors to improperly evaluate the amount of harm posed by Olson’s violation of the protective order.
The judge gave his first curative instruction during the defense attorney’s summation. The prosecutor objected when the defense attorney commented that Ms. Olson’s allegations were baseless.” (The judge had precluded litigation over the truth of the prior-crime evidence.) The judge sustained the prosecutor’s objection and orally instructed the jurors that they need not concern themselves with whether Ms. Olson’s allegations had a basis in fact, because another judge had already made that determination prior to issuing the protective order:
*1194 [Regarding whether there’s any [basis] for the allegations: That is not an issue here, ... That’s something for the court m deciding whether to ... grant orders. It’s not relevant to this case at all to decide whether or not any of the allegations were accurate or not. It’s [only relevant] that ... an order .,. was issued. (Emphasis, added.)
The jury’s likely takeaway from this brief and confusing oral instruction was the exact opposite of what the judge intended: that another judge had reviewed the prior-crime allegations and had found that there was a factual basis for these allegations, and that the jurors need not decide whether there was any basis for these allegations because that had already been decided by the other judge when he granted the order.
The second curative instruction, given at trial’s end, was scarcely clearer. The judge instructed the jury that Olson “[was] not given any opportunity to challenge the allegations or have any input to the court prior to the entry of such an order.” But this simply informed the jury that a judge evaluated Ms. Olson’s allegations—and acted upon them—without Olson’s input, not that the allegations were necessarily unreliable.
The curative instruction further directed the jury to disregard “any findings made by the court.” This obviously referred to the probable cause findings in the protective order. Effectively, the instruction told the jury to disregard the fact that a judge had found probable cause to believe that Ms. Olson’s prior-crime allegations were true, but not the fact that she had gone to the domestic violence court and lodged those accusations in the first instance. But because Ms. Olson testified at trial, the jury could well have found her to be a credible witness, one unlikely to lodge baseless allegations.
Finally, this curative instruction told the jury that the allegations were irrelevant to the charge against the defendant. But a different instruction informed the jury that, quite apart from the charge, the defendant had raised the affirmative defense of necessity—and that as to that defense, Olson bore the burden of proof. The court never instructed the jury that, during its evaluation of Olson’s necessity defense, and more particularly in its evaluation of the harm reasonably to be foreseen from Olson’s return to the trailer, the jury could not consider Ms. Olson’s sworn statement to the domestic violence court. And Ms. Olson’s allegations clearly suggested that Olson was an obsessed domestic batterer and sexual offender.
For these reasons, I am unable to share the majority’s optimism that the judge’s curative instructions, couched as they were in legalese, accomplished the task of unringing an extraordinarily resounding bell and actually cured the error. Accordingly, I respectfully dissent.

. See, e.g., Greenwood v. State, 237 P.3d 1018, 1022 (Alaska 2010).